## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. |
| v. | 1:13-cr-00484-JEC-RGV |
| MUNA HUSSEIN ABDI, *also known as* Sulekha Hussein Sagadi, and SALMA AHMED HUSSEIN | |

### MAGISTRATE JUDGE'S FINAL ORDER, REPORT, AND RECOMMENDATION ON DEFENDANTS' PRETRIAL MOTIONS

Defendants Muna Hussein Abdi ("Abdi") and Salma Ahmed Hussein ("Salma Hussein"), collectively referred to as "defendants," are charged in a twenty-three count indictment. [Doc. 1].[1]  Presently pending are Salma Hussein's motion to dismiss the indictment, [Doc. 29], Abdi's motion to dismiss Counts One through Six of the indictment, or, alternatively, for a bill of particulars, [Doc. 30], Abdi's separate motion for a bill of particulars, [Doc. 31], Salma Hussein's motion to adopt Abdi's motion for a bill of particulars, [Doc. 32], and Abdi's motion to adopt Salma Hussein's motion to dismiss the indictment, [Doc. 33].  For the reasons that follow, defendants' motions to adopt, [Docs. 32 & 33], are **GRANTED**, the motion for bill

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

of particulars, [Doc. 31], is **DENIED**, and it is **RECOMMENDED** that defendants'
motions to dismiss the indictment, [Docs. 29 & 30], be **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2013, a federal grand jury sitting in the Northern District of
Georgia returned a twenty-three count indictment against defendants.  [Doc. 1].
Specifically, the indictment charges: (1) Abdi in Count One with conspiring to
harbor aliens for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I);
(2) Abdi in Counts Two through Six with encouraging and inducing five aliens to
come to, enter, and reside in the United States for the purpose of commercial
advantage and private financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv),
(v)(II), and (a)(1)(B)(i); (3) both defendants in Count Seven with conspiring to
commit identity theft, in violation of 18 U.S.C. § 371; (4) Abdi in Counts Eight and
Nine with knowingly making false statements, in violation of 18 U.S.C. § 1015(a); (5)
both defendants in Count Ten with aiding and abetting making false statements, in
violation of 18 U.S.C. §§ 1015(a) and 2; (6) both defendants in Counts Eleven and
Thirteen through Twenty-three with aiding and abetting aggravated identity theft,
in violation of 18 U.S.C. §§ 1028A(a)(1) and 2; and (7) both defendants in Count
Twelve with aiding and abetting fraud in connection with identification documents,
in violation of 18 U.S.C. §§ 1028(a)(4) and 2.  See [id.].

Abdi is the biological mother of co-defendant Salma Hussein.  [Id. at 1 ¶ 3, 2 ¶ 4].  Abdi entered the United States in 1998 and filed an application for asylum on September 16, 1998, seeking relief from persecution in Somalia, which was granted on February 17, 1999.  [Id. at 1 ¶ 1, 3 ¶ 11(a)-(b)].[2]  Sometime prior to October, 2003, co-defendant Salma Hussein illegally entered the United States and has been and is presently "unlawfully [] in the United States."  [Id. at 2 ¶ 4].  The indictment alleges that Abdi and Ahmed Hassan, as well as others known and unknown to the Grand Jury, conspired to bring five girls to the United States and have them reside here as Abdi's daughters for the purpose of commercial advantage and private financial gain even though none of these girls were actually Abdi's daughters.  [Id. at 3 ¶ 10, 4-6 ¶ 12].[3]

---

[2] The indictment also alleges that on December 15, 1999, Abdi filed a Form I-730, Refugee/Asylee Relative Petition, for Ahmed Hussein Hassan ("Ahmed Hassan"), listing him as her husband, though he is in fact her half-brother.  [Doc. 1 at 4 ¶ 12(d)].

[3] In particular, the indictment alleges that on December 15, 1999, Abdi filed a Form I-730 for Khadija Ahmed Hussein (referring to her as Salma Ahmed Hussein), Yasmine Ahmed Hussein, Farhiya Ahmed Hussein, Ayan Ahmed Hussein, and Amina Ahmed Hussein.  [Doc. 1 at 5 ¶ 12(e)].  These petitions were initially denied, but after Abdi revised them, they were granted on May 21, 2001.  [Id. ¶ 12(e)-(f)].  Additionally, on February 28, 2014, the government filed a bill of particulars, in which it asserts that Yasmin Ahmed Hussein, Farhiya Ahmed Hussein, Ayan Ahmed Hussein, and Amina Ahmed Hussein "are all unindicted co-conspirators known to the [g]overnment[.]"  [Doc. 38 at 1].

Specifically, the indictment alleges that on October 28, 2003, Abdi claimed that her niece, Khadija Ahmed Hussein, was her daughter, and she brought her to the United States as a refugee using co-defendant Salma Hussein's name.  [Id. at 1 ¶ 3, 5 ¶ 12(g)].  On this same date, the other four girls also entered the United States and began residing with Abdi.  [Id. at 5-6 ¶ 12(g)].  The indictment also alleges that Abdi received and kept refugee benefits for each of her alleged daughters; that in late 2003 or early 2004, she sent Ayan Ahmed Hussein to work as a maid in Tennessee; and that in 2004, she made Farhiya Ahmed Hussein and Yasmin Ahmed Hussein quit high school and sent them to work outside the home while she kept their paychecks. [Id. at 6 ¶ 12(h)-(j)].  The indictment further alleges that Abdi continued to encourage and induce the girls to "come to, enter, and reside in the United States," providing such encouragement to Ayan Ahmed Hussein through the summer of 2004, to Khadija "Salma" Ahmed Hussein through the summer of 2005, and to Amina Ahmed Hussein, Yasmin Ahmed Hussein, and Farhiya Ahmed Hussein through March of 2006.  [Id. at 7].[4]  The defendants are also charged with conspiring

_____

[4] In the government's February 28, 2014, bill of particulars, it asserts that Abdi "induced and encouraged each of the Aliens listed to reside in the United States by providing them with room and board, clothing, and other necessities."  [Doc. 38 at 1-2].  The indictment also alleges that on December 17, 2008, Abdi filed a Form I-485, Application to Register Permanent Residence or Adjust Status, for herself, in which she claimed that Farhiya Ahmed Hussein, Yasmin Ahmed Hussein, Ayan Ahmed Hussein, and Amina Ahmed Hussein were her daughters, and that during the course of the conspiracy, these girls also filed Form I-485s along with the application

to commit identity theft by possessing identification documents, authentication features, and false identification documents with the intent to use such documents to defraud the United States in that they sought to use Khadija Hussein to obtain lawful permanent resident status for Salma Hussein by having Khadija Hussein assume Salma Hussein's identity when she initially entered the country and obtaining immigration documents bearing Salma Hussein's name.  [Id. at 8-9].[5] Finally, defendants are charged with knowingly making false statements in connection with their Form I-485 applications and G-325A biographic information. [Id. at 10-11].

_____

for Salma Hussein. [Doc. 1 at 6 ¶ 12(k)-(l)].  Additionally, the indictment alleges that on August 31, 2010, Abdi filed another Form I-485 in which she again claimed that Farhiya Ahmed Hussein, Yasmin Ahmed Hussein, Ayan Ahmed Hussein, and Amina Ahmed Hussein were her daughters when they were not.  [Id. at 6-7 ¶ 12(m)].

[5] The indictment alleges that Salma Hussein used the alien number assigned to Khadija Hussein in the name of Salma Hussein, that Salma Hussein claimed on a Form I-485 to have entered the United States in October of 2003 when in fact it was Khadija Hussein who had entered on that date, and that Salma Hussein was approved as a lawful permanent resident in January of 2010 under the alien number and refugee status granted to Khadija Hussein.  See [Doc. 1 at 9, 11-12].  It is further alleged that Salma Hussein, aided and abetted by Abdi, used a permanent resident card and alien registration number assigned to Khadija Hussein to apply for federal Pell grants, a driver's license, in-state college tuition, and federal Stafford loans.  [Id. at 12].

Case 1:13-cr-00484-AT-RGV   Document 68   Filed 06/04/14   Page 6 of 32


## II.  DISCUSSION

**A.**    <u>Abdi's Motion to Dismiss and Motion for Bill of Particulars</u>

    **1.**    **Abdi's Motion to Dismiss Counts One through Six of the Indictment**

Abdi moves to dismiss Counts One through Six of the indictment, arguing that these counts are barred by the statute of limitations.  [Doc. 30].  Specifically, Abdi argues that Count One, which charges a conspiracy to unlawfully encourage and induce aliens to come to, enter, and reside in the United States, "fails to allege an overt act committed in furtherance of the charged conspiracy within the limitations period."  [<u>Id.</u> at 1-2].  Abdi also argues that Counts Two through Six of the indictment, which charge that Abdi encouraged and induced five aliens to come to, enter, and reside in the United States for the purpose of commercial advantage and private financial gain, are due to be dismissed because "[o]n the face of the indictment, at least two of the alternative ways these counts are charged– 'come to' and 'enter'– are outside the limitations period" since the aliens allegedly entered and began to reside with Abdi in October of 2003 and "[t]here can be no encouragement or inducement to come to or enter this country after this point."  [<u>Id.</u> at 2].  Abdi further argues that the "third way that Counts [Two through Six] are charged, i.e., unlawfully inducing aliens to 'reside' in the United States, fails to state a claim because the charges are framed as continuing offenses, which they are not" and that

the "'reside' basis for Counts [Two through Six] is also outside the limitations period

unless the government can articulate an act of encouragement or inducement within

the limitations period."[6]  [Id.].  Alternatively, Abdi seeks a bill of particulars with

regard to Counts Two through Six, [id. at 14-15], and has also filed a separate motion

for a bill of particulars, see [Doc. 31]; see also [Doc. 51 at 19-25].  In response, the

government contends that Counts One through Six each sufficiently charge an

offense within the applicable statute of limitations and that Abdi is not entitled to

a bill of particulars beyond what it has already provided.  [Doc. 39].

     "Federal Rule of Criminal Procedure 7(c) governs the requirements for what

must be contained in the indictment to properly charge a crime."  United States v.

Ressler, Criminal File No. 1:06-CR-103-1-TWT, 2007 WL 602210, at *2 (N.D. Ga. Feb.

16, 2007), adopted at *1.  "Rule 7(c)(1) requires that '[t]he indictment or information

[] be a plain, concise, and definite written statement of the essential facts constituting

the offense charged and [] be signed by an attorney for the government.'"  Id.

(alterations in original) (quoting Fed. R. Crim. P. 7(c)(1)).  "Rule 7(c)(1) further

provides that '[f]or each count, the indictment or information must give the official

or customary citation of the statute, rule, regulation, or other provision of law that

---

    [6] Abdi also argues that Counts Two through Six are duplicitous.  See [Doc. 30
at 2; Doc. 51 at 18-19].

the defendant is alleged to have violated.'" Id. (alterations in original) (quoting Fed. R. Crim. P. 7(c)(1)).

"'Generally, an indictment is sufficient if it: 1) sets forth the elements of the offense in a manner which fairly informs the defendant of the charge against which [s]he must defend and 2) enables [her] to enter a plea which will bar future prosecution for the same offense.'" United States v. Germany, 296 F. App'x 852, 862 (11th Cir. 2008) (unpublished) (internal citation omitted) (quoting United States v. Poirier, 321 F.3d 1024, 1028 (11th Cir. 2003)).  The Eleventh Circuit has held that "'when analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations.'" Id. (quoting Poirier, 321 F.3d at 1029 (internal citation omitted)). Furthermore, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998). "Similarly, if the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge, the indictment is not fatally deficient on Fifth Amendment grounds." Id. (footnote and citation omitted).

### a. *Count One of the Indictment*

Count One alleges that beginning on or about September 11, 1998, and continuing until the present, in the Northern District of Georgia and elsewhere, Abdi, and others known and unknown, "did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and others, to violate [8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i)],[7] for the purpose of commercial advantage and private financial gain" by encouraging and inducing aliens to "come to, enter, and reside in the United States," in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  [Doc. 1 at 1-7 (footnote added)].[8]  Section 1324(a)(1)(A)(v)(I)

---

[7] Section 1324(a)(1)(A)(iv) provides that "[a]ny person who . . . encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished as provided in subparagraph (B)."  8 U.S.C. § 1324(a)(1)(A)(iv).  Section 1324(B)(i) provides that "[a] person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs . . . be fined under Title 18, imprisoned not more than 10 years, or both[.]"  8 U.S.C. § 1324(B)(i).

[8] The indictment charges, among other overt acts, that in December of 1999, Abdi filed petitions for Refugee/Asylee Relative Petition, Form I-730 on behalf of her five alleged daughters, and that in October of 2003, these girls entered the United States and began to reside with her.  [Doc. 1 at 5-6].  Additionally, it is alleged that Abdi kept these girls' refugee benefits; that in 2004, she made two of the girls quit high school, work outside of the home, and that she kept their paychecks; that in late 2003 or early 2004, she sent one of the girls to work as a maid for a friend in Tennessee; and that in December of 2008, she filed a Form I-485, Application to Register Permanent Residence or Adjust Status, for herself claiming four of the girls as her daughters and that at some unspecified time, each of these girls also filed Form I-485s on their own behalf.  [Id. at 6].

criminalizes "engag[ing] in any conspiracy to commit any of the preceding acts," which includes violating § 1324(a)(1)(A)(iv). See 8 U.S.C. § 1324(a)(1)(A)(v)(I). This offense has a ten-year statute of limitations, see 18 U.S.C. § 3298, and the government concedes that since the indictment at issue was returned on December 10, 2013, Abdi is correct that the conspiracy charge "must set forth an overt act on or after December 10, 2003 to satisfy the statute of limitations," [Doc. 30 at 9]; see also [Doc. 39 at 6].

Generally, the statute of limitations "begins to run when each element of the crime has occurred and the crime is complete." United States v. Arnold, No. CR 213–26, 2014 WL 66754, at *1 (S.D. Ga. Jan. 7, 2014) (citations omitted). Therefore, "conduct constituting a completed offense which falls outside the applicable limitations period may not be prosecuted unless the crime is determined to be a continuing offense." United States v. W.R. Grace, 429 F. Supp. 2d 1207, 1240 (D. Mont. 2006) (footnote and citation omitted). "[A]n offense is continuing if the substantive offense statute's language compels such a treatment, or if the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." Arnold, 2014 WL 66754, at *1 (citation omitted). "A common example of a continuing offense is conspiracy." United States v. Pacchioli, 718 F.3d 1294, 1302 (11th Cir. 2013) (citation omitted).

10

Abdi argues that Count One must be dismissed because a violation of 18 U.S.C. § 1324(a)(1)(A)(iv) "is not a continuing offense" and therefore, "the government must prove that the person charged with such a violation engaged in some conduct to knowingly and unlawfully encourage or induce an alien to come to, enter, or reside in this country" and that the "crime is over when a person encourages or induces the alien." [Doc. 30 at 10 (citation omitted)]. Specifically, Abdi contends that the offense "would have been complete, at the very latest, at the time the daughters came to, entered, and began to reside in the United States as set forth in the indictment: October 2003" and that "[e]vidence of any later encouragement or inducement . . . does not amount to an 'overt act' in furtherance of an already successful conspiracy." [Id. at 12-13 (citation omitted)]. In response, the government asserts that it "has set forth numerous acts of encouragement or inducement which took place on or after December 10, 2003, and were designed to have the five girls reside in the United States." [Doc. 39 at 6 (citations omitted)].

While Abdi is correct that a violation of 8 U.S.C. § 1324(a)(1)(A)(iv) is not a continuing offense, see [Doc. 30 at 10 (citing United States v. Sineneng-Smith, Case No. CR–10–00414–RMW, 2013 WL 6776188, at *2 (N.D. Cal. Dec. 23, 2013))], in the sense that the offense does not continue past the occurrence of the completion of the offense, "there is a distinction to be drawn between conduct that is deemed a

continuing offense . . . and conduct that constitutes a continuing course of criminal activity," United States v. Motz, 652 F. Supp. 2d 284, 293 (E.D.N.Y. 2009) (citation and internal marks omitted), and here, she is charged with conspiring to violate § 1324(a)(1)(A)(iv), see [Doc. 1 at 1-7]. The elements of a conspiracy are "an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the conspirators." United States v. Fernandez, 353 F. App'x 363, 371 (11th Cir. 2009) (per curiam) (unpublished) (citation and internal marks omitted). "[A]s with any criminal conspiracy, the relevant date in the statute of limitations analysis is the date on which the last overt act in furtherance of the conspiracy is made[.]" United States v. Dynalectric Co., 859 F.2d 1559, 1565 (11th Cir. 1988) (citation omitted); see also United States v. Walls, 577 F. Supp. 772, 773 (N.D. Ga. 1984) (citation omitted) ("Generally, the date of the last overt act charged in the indictment controls whether a criminal prosecution has been timely commenced for purposes of the applicable statute of limitations."). Here, the indictment charges as overt acts instances of encouragement that occurred after December 10, 2003, to induce the five girls to reside in the United States, see [Doc. 1 at 6 (describing acts that occurred in 2004, among others)], and the indictment is therefore timely as to Count One,[9] see United States v. Parker, 586 F.2d 422, 430 (5th

_____

[9] The government focuses on the language of the statute charging Abdi with encouraging the aliens to reside in this country. See generally [Doc. 39]. Abdi

Cir. 1978)[10] (citation omitted) ("Though the conspiracy began outside the limitation period, the conspiracy continued and overt acts were committed within the limitation period" and "[t]his is sufficient.").

Abdi argues that the indictment fails to allege any encouragement or inducement within the meaning of the statute that occurred on or after December 10, 2003. [Doc. 30 at 13]. Specifically, Abdi asserts that the indictment "charges only that [she] kept the paychecks of Farhiya and Yasmin in 2004 and that she sent Ayan to Tennessee in late 2003/early 2004 to work as a maid" and that "[t]hese are certainly not acts of inducement or encouragement[.]"  [Id. (internal marks omitted)].  Abdi also asserts that the allegations regarding her 2008 and 2010 applications to adjust her permanent resident status for herself and the five alleged

---

argues that any conspiracy related to the portion of § 1324(a)(1)(A)(iv) referencing coming to or entering the United States ended at the point that the aliens actually came and entered this country, which was October of 2003, and is therefore outside of the statute of limitations.  See [Doc. 51 at 4-5].  However, the indictment "tracks the language of the statute" and is "accompanied with [] a statement of the facts and circumstances as will inform [Abdi] of the specific offense, coming under the general description, with which [she] is charged."  United States v. McGarity, 669 F.3d 1218, 1236 (11th Cir. 2012) (citation and internal marks omitted).  To the extent Abdi argues that the charging language in the indictment of "come to" or "enter" the United States should be stricken from the indictment, see [Doc. 51 at 5], her request is due to be denied as this is an issue to be raised at trial and the Court may then provide a jury instruction to limit any potential prejudice.

[10] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding precedent of the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

daughters' own applications to adjust their status to permanent residency do not constitute "overt acts which serve to extend the statute of repose." [Id.].

The Eleventh Circuit has construed the term "encourage" within the meaning of the statute broadly and has equated "encourage" with "help." See United States v. Lopez, 590 F.3d 1238, 1250-52 (11th Cir. 2009); United States v. Ndiaye, 434 F.3d 1270, 1298 (11th Cir. 2006); see also Edwards v. Prime, Inc., 602 F.3d 1276, 1295-97 (11th Cir. 2010); United States v. Suberu, 367 F. App'x 19, 20-21 (11th Cir. 2010) (per curiam) (unpublished); United States v. Maughon, Criminal Action No. 1:11–CR–028–TWT–ECS, 2011 WL 3489973, at *3-4 (N.D. Ga. June 21, 2011), adopted by 2011 WL 3489948, at *1 (N.D. Ga. Aug. 9, 2011); United States v. Delgado-Ovalle, 2013 WL 6858499, at *5-7 (D. Kan. Dec. 30, 2013) (footnote, citations, and internal marks omitted) (noting that the Seventh and Eleventh Circuits interpret "encourage" to mean "help," but requires more than "mere employment" of illegal aliens). That is, "conduct which involve[s] helping an illegal alien . . . so that [s]he could work and live in this country [is] sufficient to support a conviction under § 1324(a)(1)(A)(iv)." Ndiaye, 434 F.3d at 1298. Despite Abdi's attempt to minimize or distinguish those cases, see [Doc. 51 at 6-11 (attempting to distinguish Suberu, Ndiaye, and Maughon)], the indictment sufficiently alleges overt acts of encouragement and inducement within the statute of limitations under this binding

14

precedent.  In particular, the indictment alleges that after their entry into the United States, the girls resided with Abdi, who received and kept their refugee benefits, and in late 2003 and 2004, Abdi arranged for three of the girls to obtain jobs.  [Doc. 1 at 6].  Additionally, the government's bill of particulars states that Abdi encouraged the girls to reside in this country up until Summer of 2004 and 2005 for two of the girls and the others through March of 2006 by providing them with "room and board, clothing, and other necessities."  [Doc. 38].[11]  Under the Eleventh Circuit's broad interpretation of encouragement, the acts alleged in the indictment and detailed in the bill of particulars are sufficient to support the charge and Count One is therefore not due to be dismissed on this basis.

### b.    *Counts Two through Six of the Indictment*

Abdi also moves to dismiss Counts Two through Six of the indictment, arguing that the five substantive counts for violating 8 U.S.C. § 1324(a)(1)(A)(iv)

---

[11] While a bill of particulars cannot save an invalid indictment, see Russell v. United States, 369 U.S. 749 (1962), the indictment here sufficiently alleges overt acts in furtherance of the conspiracy charged within the statute of limitations.  And, the indictment's alleged "lack of specific facts is addressed by the bill of particulars" and the "indictment together with the bill of particulars . . . give [Abdi] sufficient information to place [her] on notice of the offense and prepare a defense for trial." United States v. Musgrove, 845 F. Supp. 2d 932, 944 (E.D. Wis. 2011); see also United States v. Mermelstein, 487 F. Supp. 2d 242, 249 (E.D.N.Y. 2007) (citation omitted) ("[W]here an indictment is 'minimally sufficient,' a court may look to the entire record, including a bill of particulars or other discovery, to determine whether the defendant has received adequate notice of the specific charges to prepare his defense and protect against double jeopardy.").

should be dismissed as barred by the statute of limitations since a violation of this statute is not a continuing offense.  [Doc. 30 at 14-15]; see also [Doc. 51 at 16-17]. However, for the reasons already discussed, the indictment sufficiently alleges that Abdi encouraged and induced five aliens to reside in the United States through the Summer of 2004 and 2005 for two girls and through March of 2006 for the other three girls, [Doc. 1 at 7], and provides particular details about acts that occurred within the statute of limitations to encourage these girls, [id. at 6].  Additionally, as previously discussed, the government's bill of particulars specifies the means used by Abdi to encourage these girls to reside in the United States.  See [Doc. 38].  While the charge as it relates to coming to or entering the United States was consummated at the time the girls came to and entered this country in October of 2003, the encouragement and inducement to continue to reside here did not cease at that time. Indeed, this is not a situation where the defendant took no further action beyond having the girls come to and enter this country.  Rather, she is alleged to have continued to engage in criminal conduct by encouraging and inducing them to reside here by, among other things, having them reside with her, providing them with room and board, clothing, and other necessities, and securing employment for them.

Abdi also argues that Counts Two through Six are duplicitous "by virtue of the government's representations about multiple acts of encouragement and inducement [] that purportedly support each charge over the course of a period of months." See [Doc. 51 at 18-19]; see also [Doc. 30 at 15]. "A duplicitous indictment charges two or more separate and distinct crimes in a single count." United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989) (per curiam) (citation omitted). "Duplicity, if uncorrected, can lead to the conviction of a defendant without unanimity among jurors respecting what offense has been committed, to prejudice against a defendant in a later double jeopardy defense, and to confusion respecting the admissibility of evidence." United States v. Campbell, No. 1:04–CR–0424–RWS, 2005 WL 6436621, at *7 (N.D. Ga. Oct. 24, 2005) (citation omitted).  However, duplicity is not usually fatal to an indictment, see United States v. Robinson, 651 F.2d 1188, 1194 (6th Cir. 1981), and other courts have noted "that the rules regarding duplicity are pleading rules and, as such, the defendant's remedy is to move to require the prosecution to elect the charge within the count and that a duplicitous indictment is remediable by a jury instruction particularizing the offense charged in each count," United States v. James, 749 F. Supp. 2d 705, 711 (S.D. Ohio Sept. 23, 2010) (citation omitted).  That is, generally, any confusion or risk of non-unanimity can be appropriately addressed and eliminated by special interrogatories and careful

17

jury instructions. See United States v. Davis, 306 F.3d 398, 416 (6th Cir. 2002); United States v. Marshall, 75 F.3d 1097, 1111-12 (7th Cir. 1996); United States v. Pungitore, 910 F.2d 1084, 1136 (3d Cir. 1990).[12]

Abdi's arguments concerning multiple allegations of criminal misconduct are without merit.  Indeed, the charging paragraphs in all five counts are clear and unambiguous as to the single charge asserted in each count with respect to the specific alien named in each count, and any confusion as to Counts Two through Six or risk of non-unanimity could be addressed through appropriate jury instructions. See Robinson, 651 F.2d at 1194.  Accordingly, Counts Two through Six are not due to be dismissed.

### 2.   Motion for Bill of Particulars

Alternatively, Abdi seeks a bill of particulars, see [Doc. 30 at 15], and has filed a separate motion for a bill of particulars, see [Doc. 31], which Salma Hussein moved to adopt, [Doc. 32].  Specifically, defendants request the following particulars with regard to the indictment:

1.   As to Count I of the indictment, please identify all of the alleged un-indicted coconspirators who are known to the government as set forth in paragraph 10 of this count of the indictment.

---

[12] Moreover, "[a] single count that alleges commission by a defendant of a crime by several means is not duplicitous[.]" United States v. Barret, No. 10–cr–809 (S–3)(KAM), 2011 WL 6780901, at *2 (E.D.N.Y. Nov. 27, 2011) (citations omitted).

2.      As to Count I, paragraph 10 of the indictment, please identify the date the conspiracy ended.

3.      As to paragraph 12h of the indictment, please identify the "refugee benefits" that [] Abdi is charged with having received for her daughters including the date of receipt, amounts, and source.

4.      As to paragraph 12i of the indictment, please identify the paychecks [] Abdi is charged with keeping, including the check numbers, amounts, and source.

5.      As to Count I of the indictment, please identify all dates, forms, and amounts of "commercial advantage" and/or "private financial gain" that the government contends enured to [] Abdi's benefit as a result of the charged conspiracy.

6.      As to Counts 2-6 of the indictment, please identify, for each count, (a) the illegal act of inducement or encouragement, (b) the date on which it occurred, (c) the "alien" toward whom the act was directed by [] Abdi, and (d) whether it was encouragement and/or inducement to "come to," "enter," or "reside" in the United States.

7.      As to Counts 2-6 please identify the dates, forms, and amounts of "commercial advantage" and/or "private financial gain" that the government contends [] Abdi's recvied [sic] as a result of these charges.

8.      As to Count 7, paragraph 4, please identify the overt acts which the government is [sic] incorporated by vague reference to "Counts Ten through Twenty-Three of this Indictment."

9.      As to Count 7, paragraph 1, please identify the "identification documents, authentication features, and false identification documents" that [] Abdi and her daughter Salma purportedly conspired to possess with the intent to defraud the United States.

10.    As to Counts 8-10, please identify the false statements which serve as a basis for the charges.

11.    As to Count 12, please identify each "identification document, authentication feature, and false identification document" alleged to have been unlawfully possessed.

[Doc. 31 at 5-6].[13]

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court "may direct the government to file a bill of particulars."  Fed. R. Crim. P. 7(f).  "The purpose of a true bill of particulars is threefold: 'to inform the defendant[s] of the charge against [them] with sufficient precision to allow [them] to prepare [their] defense, to minimize surprise at trial, and to enable [them] to plead double jeopardy in the event of a later prosecution for the same offense.'"  United States v. Reddy, Criminal Action File No. 1:09-CR-0483-ODE/AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010), adopted as modified by 2010 WL 3211029, at *1 (N.D. Ga. Aug. 11, 2010) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)); see also

---

[13] On February 28, 2014, the government filed a bill of particulars, [Doc. 38], in which it provided defendants with the identities of all unindicted co-conspirators known to it as requested by Abdi in the first enumerated request as well as the means used by Abdi to induce or encourage each of the aliens to reside in the United States, including providing them with room and board, clothing, and other necessities, as requested by Abdi in the sixth enumerated request.  The parties agree that the first request has therefore been satisfied, see [Doc. 51 at 20]; however, Abdi contends that the government's response to its sixth request is deficient, see [id.]. Moreover, in her reply brief, see [Doc. 51], Abdi withdrew Requests Nos. 8 and 11, [id. at 23 n.6].  Accordingly, only Request Nos. 2-7 and 9-10 remain at issue.

United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981); United States v. Zellner, Criminal Indictment No. 1:09-CR-320-TCB-GGB, 2011 WL 530718, at *9 (N.D. Ga. Jan. 14, 2011), adopted by United States v. Chester, Criminal Action File No. 1:09-cr-320-TCB-GGB, 2011 WL 529952, at *1 (N.D. Ga. Feb. 4, 2011).  Generalized discovery is not a valid reason for seeking a bill of particulars, Colson, 662 F.2d at 1391; United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978), and "[a] bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial," Zellner, 2011 WL 530718, at *9 (citation omitted).  That is, the "crucial question is whether the information sought is necessary, not whether it is helpful."  United States v. Calhelha, 456 F. Supp. 2d 350, 365 (D. Conn. 2006) (citations and internal marks omitted).  Further, a defendant is not entitled to a bill of particulars describing information which is already evident from other sources, such as elsewhere in the indictment or in discovery.  United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986), modified on other grounds by 801 F.2d 378 (11th Cir. 1986); see also Reddy, 2010 WL 3210842, at *5.

"A bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy." Rosenthal, 793 F.2d at 1227.  A bill of particulars cannot be used to ferret out additional overt acts not listed in the indictment, as long as the indictment alleges

the required number of overt acts under the statute being charged.  See id.; Colson,

662 F.2d at 1391; United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978); United

States v. Green, No. 1:08-CR-41-SPM/AK-2, 2009 WL 2589107, at *1 (N.D. Fla. Aug.

17, 2009).  "As applied to a charge of conspiracy, . . . the view virtually universally

held is that the defendant is not entitled to particulars regarding the formation of the

conspiracy; [the] exact time and place of overt acts and the names and addresses of

persons present; the details concerning how and when the conspiracy was formed

or when each participant entered the conspiracy."  United States v. Upton, 856 F.

Supp. 727, 753 (E.D.N.Y. 1994) (citations omitted); see also United States v. Leiva-

Portillo, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *15 (N.D. Ga. June 12, 2007),

adopted at *1 (citations omitted) ("Case law is . . . clear that the [g]overnment is not

required to identify the exact dates or details of when a defendant or any conspirator

joined or withdrew from a charged conspiracy, . . . or specific acts or overt acts done

in furtherance of a charged conspiracy by particular defendants[.]").

    With respect to defendants' requests in Nos. 2 through 7, the information

sought is beyond the proper scope of a bill of particulars.  See United States v.

Sherriff, 546 F.2d 604, 606 (5th Cir. 1977) (citations omitted) ("The purpose [of a bill

of particulars] is not to provide detailed disclosure before trial of the Government's

evidence."); United States v. Esteves, 886 F. Supp. 645, 646 (N.D. Ill. 1995)

(evidentiary detail sought by defendant beyond proper scope of bill of particulars);

United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (citations omitted)

(requests to know the "whens," "wheres," and "with whoms" of acts in conspiracy

are routinely denied); United States v. Lobue, 751 F. Supp. 748, 756 (N.D. Ill. 1990)

("Requests for . . . evidentiary details as to when and where conversations took place

are not within the scope of a bill of particulars."); United States v. White, 50 F.R.D.

70, 71-72 (N.D. Ga. 1970). Defendants have failed to specify how the additional

details they seek in these requests are necessary to enable them to prepare their

defense, avoid surprise, or plead double jeopardy in a subsequent proceeding,

stating only that "[a]t stake is the scope of a very loosely defined . . . conspiracy over

15 years" and that they seek "essential facts which [they] must defend to a jury."

[Doc. 51 at 21-22]. However, "[n]o showing was made that the matters requested

were necessary to inform the defendant[s] of the charge against [them] with

sufficient precision to enable [them] to prepare [their] defense or avoid surprise.

Neither were they shown to be necessary for pleading [their] acquittal or conviction

in bar of further prosecution for the same offense." See United States v. Gorel, 622

F.2d 100, 104 (5th Cir. 1979). As to the remaining particulars sought by

defendants, including specification of identification documents, authentication

features, and false identification documents that defendants allegedly conspired to

possess with intent to defraud and any false statements that serve the basis for the charges in Counts Eight through Ten of the indictment, see [Doc. 31 at 6], these are likewise beyond the proper scope of a bill of particulars.  See United States v. Lacerda, Crim. No. 12–303 (NLH/AMD), 2013 WL 3177814, at *14-15 (D.N.J. June 19, 2013) (finding information sought in defendant's requests for a bill of particulars, including the specific false statements and misrepresentations she made, were "outside the purview of a bill of particulars").  Indeed, what defendants are "seeking is generalized discovery that is not a proper purpose of a bill of particulars," United States v. Baitcher, Criminal Action File No. 1:11–CR–536–SCJ–AJB, 2013 WL 1501462, at *2 (N.D. Ga. Mar. 22, 2013) (citation omitted), and some of the information sought is already in the indictment, see [Doc. 1 at 8-9 (Count Seven which identifies the dates and specific documents that defendants allegedly conspired to possess), 10 (Counts Eight through Ten which identify the specific applications and dates that defendants are alleged to have submitted with false statements)].

Furthermore, the government represents that it has "provided the defendant[s] with discovery that well exceeds the scope of its discovery obligation" and that the "discovery material provided contains much of the information defendants seek . . . and sufficiently advises defendant[s] of the conduct for which [they are] being prosecuted, enables [them] to prepare [their] defense without

surprise at trial, and enables them to plead double jeopardy in the future," [Doc. 39 at 13 (citation omitted)], and a "defendant is not entitled to a bill of particulars with respect to information which is already available through other sources," Baitcher, 2013 WL 1501462, at *2 (citations and internal marks omitted); see also United States v. Kelly, No. 1:13–cr–108–WSD–JSA, 2014 WL 1153375, at *15 (N.D. Ga. Mar. 21, 2014).  Accordingly, defendants' motion for a bill of particulars, [Doc. 31], is hereby **DENIED**.

**B.**    **Salma Hussein's Motion to Dismiss the Indictment**

Salma Hussein is charged with one count of conspiring with her mother to commit identity theft; one count of making false statements in connection with her September 8, 2009, I-485 application; one count of possessing a permanent resident card and alien registration number assigned to another individual with the intent to defraud the United States; and twelve counts of aggravated identity theft.  See [Doc. 1 (Counts Seven, Ten, Eleven, Twelve, and Thirteen through Twenty-three)]. Salma Hussein moves to dismiss the charges against her in the indictment because: (1) the indictment is multiplicious and violates the double jeopardy clause and (2) she was a juvenile at the time the alleged acts were committed and the Court

therefore does not have jurisdiction to prosecute her for those acts.[14]  [Doc. 29]; <u>see</u> <u>also</u> [Doc. 52].

### 1.    Multiplicity

"An indictment is multiplicitous if it charges a single offense in more than one count."  <u>United States v. Williams</u>, 527 F.3d 1235, 1241 (11th Cir. 2008) (citations omitted).  "A multiplicitous indictment not only subjects the defendant to numerous sentences for one offense, but also prejudice[s] the defendant and confuse[s] the jury by suggesting that not one but several crimes have been committed."  <u>Id.</u> (alterations in original) (footnote, citation, and internal marks omitted).  Therefore, "[a] multiplicitous indictment [] violates the principles of double jeopardy because it gives the jury numerous opportunities to convict the defendant for the same offense."  <u>Id.</u>  "To determine whether an indictment is multiplicitous, the Court first determines the 'allowable unit of prosecution.'"  <u>United States v. Jones</u>, No. 1:05-cr-617-WSD, 2007 WL 2301420, at *9 (N.D. Ga. July 18, 2007), adopted at *4 (citations and internal marks omitted).  "[C]ourts [] determine the unit of prosecution by reference to the conduct alleged, applying the following rule:

---

[14] On May 6, 2014, the Court held a hearing with regard to Salma Hussein's age at the time the criminal acts alleged in the indictment were committed, <u>see</u> [Doc. 61], and the government subsequently submitted certain exhibits it contends establish Salma Hussein's age and date of birth, <u>see</u> [Doc. 62], and Salma Hussein replied to the government's submission, <u>see</u> [Doc. 64].

Whether a transaction results in the commission of one or more offenses is determined by whether separate and distinct acts made punishable by law have been committed." Id. at *10 (citations and internal marks omitted). "The principle underlying this rule is that the 'unit of prosecution' for a crime is the *actus reus*, the physical conduct of the defendant." Id. (citation omitted).

Salma Hussein asserts that "Count[s] 13-23, though most count[s] innumerate different dates, are all tied to the same felony, Count 12" and that "multiple aggravated [identity theft] counts cannot be tied to a single felony." [Doc. 29 at 5].[15] While it is undisputed that Counts Thirteen through Twenty-three are premised on the underlying conduct set forth in Count Twelve, i.e., that Salma Hussein used another person's permanent resident card and alien registration number, she is charged with using these items on eleven separate occasions, see [Doc. 1 at 11-12], and these counts are therefore not multiplicitous. See Smith v. United States, No. 4:13 CV 1898 RWS, 2014 WL 1315227, at *6 (E.D. Mo. Mar. 28, 2014); United States v. Thuo, Criminal No. 07-57-P-H, 2007 WL 2757121, at *1 (D. Me. Sept. 20, 2007).

---

[15] Salma Hussein initially argued that "Counts 11 and 13-23 . . . are multiplicious and should be dismissed," see [Doc. 29 at 4]; however, the Court assumes this was in error as the indictment makes clear that Counts Thirteen through Twenty-three are tied to the felony alleged in Count Twelve, which charges Salma Hussein, aided and abetted by her mother, with knowingly possessing a permanent resident card and alien registration number issued to another with the intent to defraud the United States, in violation of 18 U.S.C. §§ 1028(a)(4) and 2, [Doc. 1 at 11].

Moreover, while "[a]n indictment . . . charging the same offense in more than one count is multiplicitous," this is "not fatal and does not require dismissal of the indictment." United States v. Siegelman, 2:05 CR 119 MEF, 2006 WL 752951, at *3 (M.D. Ala. Mar. 22, 2006) (alterations in original) (footnote, citation, and internal marks omitted).  Indeed, "there are less severe remedies available to alleviate potential prejudice to the [d]efendants," including "by offering appropriate instructions to the jury."  Id. (citation omitted); see also United States v. Pefanis, Criminal Action No. 1:10–CR–0513–RWS–CCH, 2011 WL 1134310, at *3 (N.D. Ga. Mar. 1, 2011), adopted by 2011 WL 1113954, at *1 (N.D. Ga. Mar. 25, 2011) (citation omitted).  Accordingly, Salma Hussein's motion to dismiss the indictment on this basis is due to be denied.

### 2.   Age of Salma Hussein

Salma Hussein argues that she "cannot be prosecuted for any alleged acts that occurred prior to her eighteenth birthday without certification from the Attorney General," that the "Attorney General has not filed such a motion nor made such a showing," that the government "bears the initial burden of proof . . . that [she] is an adult," and that she "was under the age of eighteen during the time at least some of the alleged crimes were committed and this Court does not have jurisdiction for those crimes."  [Doc. 29 at 5-7].  In response, the government asserts that various

documents establish that Salma Hussein's date of birth is January 1, 1989, see [Doc. 40 at 9-10; Doc. 62], and that the "earliest crime alleged against [her] occurred on June 7, 2009, when [she] used the Permanent Resident Card she fraudulently obtained and Alien registration number of Khadija Hussein to apply for a Federal Pell Grant," which would make her 20 years old when she committed that act, [Doc. 40 at 10-11 (footnote and citation omitted)].[16]

Initially, "the government bears the [] burden of proving defendant's age and must offer prima facie evidence of defendant's adult status." United States v. Juvenile Male, 595 F.3d 885, 897 (9th Cir. 2010) (per curiam) (citation and internal marks omitted). Courts have "recognized that a previous statement from [a

---

[16] The government points out that Count Seven of the indictment alleges overt acts in furtherance of the conspiracy to commit identity theft which were allegedly committed by Salma Hussein on December 12, 2003, and in September of 2005, see [Doc. 40 at 10 n.5]; see also [Doc. 1 at 8-9], and "concedes that [Salma Hussein] was not 18 years old at this time," [Doc. 40 at 11 n.5]. Nevertheless, the government contends that "evidence of activities prior to the defendant's 18th birthday is admissible to prove her guilt and participation in a conspiracy if there is sufficient evidence indicating that the defendant continued her activities in the conspiracy past her 18th birthday," and that here, the "indictment . . . alleges [Salma Hussein] committed additional acts in furtherance of the conspiracy on September 5, 2009; September 8, 2009; and January 15, 2010, when she was 20 and 21 years old respectively." [Id. (citation omitted)]. Indeed, "once having established that certain acts of the offense occurred after the defendant's eighteenth birthday, the entire case may be tried in accordance with the adult rules of procedure and evidence," and "evidence of [the defendant's] activities prior to [her] eighteenth birthday [is] admissible in order to prove [her] guilt and [her] participation in the conspiracy[.]" United States v. Cruz, 805 F.2d 1464, 1477 (11th Cir. 1986); see also United States v. Flores, 572 F.3d 1254, 1269 (11th Cir. 2009) (per curiam).

defendant] that [s]he is an adult can constitute such prima facie evidence, and that, [i]f the Government adequately presents such prima facie evidence, [t]he burden then shifts to the defense to come forward with evidence of [defendant's] juvenile status." United States v. Dire, 680 F.3d 446, 475 (4th Cir. 2012) (third and fourth alterations in original) (citations and internal marks omitted).  The government "would then have an opportunity to rebut [such evidence] with any additional information available." Id. (alteration in original) (citations and internal marks omitted).

The government has submitted several exhibits that set forth Salma Hussein's date of birth as January 1, 1989, thereby rendering her of adult age at the relevant time of the charges in the indictment. See [Doc. 62].  Specifically, the government has presented an immigration form, accompanying documents, and a photograph from August of 2009, in which Salma Hussein claimed her date of birth was January 1, 1989, [id., Ex. 1], along with her permanent resident card issued in January of 2009, which has her photograph and reports her date of birth as January 1, 1989, [id., Ex. 2]; see also [id., Ex. 21].  The government also submitted Salma Hussein's driver's license application and driver's license from October of 2010, which has her photograph and in which she reported her birth date as January 1, 1989.  [Id., Exs. 3-5].  Moreover, the government submitted Salma Hussein's school records, all of

which list her date of birth as January 1, 1989, see [id., Ex. 6], and she also applied for various student loans for college from the U.S. Department of Education, which also list her birth date as January 1, 1989, see [id., Exs. 7-15]; see also [id., Ex. 16 (government's summary chart explaining Exs. 7-15)].[17]

Salma Hussein argues that the government has failed to establish a prima facie case of her age, asserting that "nothing in the exhibits submitted by the [g]overnment proves that they relate to or were executed by the person who is a Defendant in this case."  [Doc. 64 at 1].  However, contrary to her contention, the government has submitted an arrest photograph, [Doc. 62, Ex. 18], and several identification documents and other evidence bearing photographs of Salma Hussein which satisfy its burden of showing that the individual who has been arrested as the Salma Hussein charged in the indictment consistently represented that her birth date was January 1, 1989, as reflected on her permanent resident card, [id., Ex. 2], driver's license, [id., Ex. 4], student identification, [id., Ex. 17], and in immigration forms, [id., Ex. 1], and school records, [id., Ex. 6], and other documents linked to her pursuit of student loans, see [id., Exs. 7-16].  The government has therefore met its prima

---

[17] At the time of Salma Hussein's arrest, she was attending Kennesaw State University and the government has submitted her student identification photo along with her arrest photo for the Court's comparison.  [Doc. 62, Exs. 17-18].  The government has also submitted photographs of Khadija Ahmed Hussein for comparison.  See [id., Exs. 19-20, 22].

facie case, see United States v. Fierro-Venegas, 441 F. App'x 474, 475 (9th Cir. 2011) (unpublished); United States v. Gomez-Gomez, No. 09-CR-209(1), 2010 WL 200278, at *2 (S.D. Ohio Jan. 13, 2010); United States v. Salgado-Ocampo, 50 F. Supp. 2d 908, 910 (D. Minn. 1999), and the burden then shifted to Salma Hussein to "come forward with evidence of [her] juvenile status," Fierro-Venegas, 441 F. App'x at 475 (citations and internal marks omitted), which she has failed to do.  Thus, Salma Hussein's motion to dismiss the indictment based on the Juvenile Delinquency Act is due to be denied.

### III.  CONCLUSION

For the reasons stated herein, defendants' motions to adopt, [Docs. 32 & 33], are **GRANTED**, the motion for bill of particulars, [Doc. 31], is **DENIED**, and it is **RECOMMENDED** that defendants' motions to dismiss, [Docs. 29 & 30], be **DENIED**.

**IT IS ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 4th day of June, 2014.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE